## Maggio v. Hughes

C.P. of Lawrence County, no. 832 of 2005, D.R.

*Mary E. Maggio,* pro se.
*Charles S. Cusick Jr.,* for defendant.
*Robert D. Clark,* for Domestic Relations Section.

HODGE, *J.,* March 8, 2006—This matter is before the court on the motion for summary judgment/motion

for equitable estoppel filed by the defendant/ petitioner, John W. Hughes.

The factual background for this case is as follows:

On July 30, 2003, plaintiff Mary E. Maggio gave birth to a minor child named [ ].

For approximately one year prior to the child's birth, and for a period of one and one-half years subsequent to the child's birth, the plaintiff and her infant lived most of the time with Mr. John Nogee.

On August 7, 2003, John Nogee signed an acknowledgment of paternity and subsequent thereto held out the child to be his own. Mr. Nogee testified at the hearing that he would not have done so but for his belief that the child was his, based on the statements from the mother, Mary E. Maggio. Mr. Nogee financially and emotionally supported the plaintiff during and after her pregnancy. In 2004, the relationship between Mr. Nogee and Mary E. Maggio deteriorated, the plaintiff filed for support against Mr. Nogee, and Mr. Nogee filed a custody complaint, seeking partial custody rights with the minor. At the Custody Conciliation Conference on June 29, 2004, the plaintiff informed the court and Mr. Nogee that Mr. Nogee was not the biological father of the child.

The court ordered genetic testing on July 6, 2004, which testing was performed on July 18, 2004. The genetic testing results were received on September 10, 2004, which results excluded John Nogee as the father of the child.

However, subsequent to receipt of the genetic testing results, the plaintiff and her child resided in Mr. Nogee's residence until September of 2005.

By order of this court dated September 9, 2005, Judge Thomas Piccione held that John Nogee was not the biological father, that the plaintiff was not entitled to support for the child from him, and that the complaint for support was dismissed.

On October 12, 2005, the plaintiff filed a support complaint against the defendant, John W. Hughes. A Support Conference was held on November 18, 2005, at which time the case was referred to the Paternity Section for determination of paternity.

Counsel for defendant subsequently filed this motion for summary judgment/motion for equitable estoppel, and the case was listed for a hearing before this court.

At the hearing on January 26, 2006, counsel for defendant John W. Hughes called as a witness on cross-examination John Nogee, who testified that in 2003, 2004, and until September of 2005, he resided with the plaintiff, Mary E. Maggio, on and off for a period of time. In 2003 and 2004, Mr. Nogee indicated that he provided support for the child. During plaintiff's pregnancy, his testimony was that the plaintiff lived away from his home as much as she lived there, however, he drove her to the hospital for the birth of the child and waited for the child to be born. Mr. Nogee was not listed as the father on the first birth certificate, but on a second birth certificate, he was listed as the father. In 2003 and 2004, John Nogee held the child out as his own, and continued to do so until September of 2004. Mr. Nogee testified that Mary E. Maggio, the plaintiff, told him that he was the father of the child, the only one responsible for conception. Upon finding out the re-

sults of the genetic testing in September of 2004, he still allowed Mary Maggio and the child to reside at his home and provided support for the plaintiff and the child out of an act of compassion, as he believed that she needed a decent place to live. Plaintiff's only assets at the time were welfare and food stamps. Mr. Nogee testified that from September of 2004 through September of 2005, he spent most of his time at his ex-girlfriend's residence.

The plaintiff, Mary E. Maggio, was called as a witness by counsel for the defendant, and testified that prior to residing with Mr. Nogee in November of 2002, she had resided with friends and at the Women's Shelter. The plaintiff further testified that Mr. Nogee took her to the hospital for the birth and that she had told Mr. Nogee that he was the father, and listed him as such on the birth certificate. The plaintiff testified that after the child was born, she spent approximately 50 percent of her time with John Nogee, and they lived as girlfriend/boyfriend when they were together. She also confirmed John Nogee's testimony that after September of 2004, he moved in with his ex-girlfriend for a period of time. The plaintiff testified that she resided at John Nogee's residence until September of 2005.

Mary E. Maggio also testified that John Nogee acted in the role of the child's father until September of 2004, which was the approximate date of the receipt of the genetic results.

Mary E. Maggio also testified that while she knew John W. Hughes, she also knew that he previously had a vasectomy, and was leaning towards John Nogee being the father because of her knowledge that John W. Hughes

previously had a vasectomy. She also acknowledged that during the period of conception, she had had sexual relations with John W. Hughes, followed two weeks later with sexual relations with John Nogee.

The defendant, John W. Hughes, testified that he had known Mary E. Maggio for six or seven years, but did not know the child existed until the spring of 2005. Mr. Hughes further testified that the child had never resided with him and he has never held the child out as his child.

Presently, defendant John W. Hughes seeks to avoid the genetic testing procedure by having this court declare that John Nogee is the child's father, notwithstanding the negative results from the genetic testing, by virtue of paternity by estoppel.

Pursuant to statute, 23 Pa.C.S. §5102(b), paternity shall be determined by any one of the following ways:

"(1) that the parents of a child born out of wedlock have married each other;

"(2) if, during the lifetime of the child, it is determined by clear and convincing evidence that the father openly holds out the child to be his and either receives the child into his home or provides support for the child; and

"(3) if there is clear and convincing evidence that the man was the father of the child, which may include a prior court determination of paternity."

The State Legislature has abolished the status of illegitimacy verses legitimacy, by statute, in stating "that all children shall be legitimate irrespective of the marital status of their parents, and, in every case where chil-

dren are born out of wedlock, they shall enjoy all the rights and privileges as if they had been born during the wedlock of their parents." 23 Pa.C.S. §5102(a).

The Uniform Act upon Blood Tests to Determine Paternity, at 23 Pa.C.S. §5104(c), makes it clear that under Pennsylvania law, while there is a statutory right to obtain blood testing to determine paternity, the right is not absolute, and must be balanced against competing societal/family interest. See also, *C.T.D. v. N.E.E.,* 439 Pa. Super. 58, 61, 653 A.2d 28, 30 (1995). In the current situation, we are not dealing with an intact family and/or an intact marriage.

Generally, estoppel in paternity issues is "aimed at achieving fairness as between the parents by holding . . . both mother and father to their prior conduct regarding the paternity of the child." *Freedman v. McCandless,* 539 Pa. 584, 592, 654 A.2d 529, 533 (1995), quoting *Gulla v. Fitzpatrick,* 408 Pa. Super. 269, 279, 596 A.2d 851, 856 (1991). "Where the principle [of estoppel] is operative, [paternity] tests may well be irrelevant, for the law will not permit a person . . . to challenge his status which he or she has previously accepted." *Matter of Green,* 437 Pa. Super. 606, 610, 650 A.2d 1072, 1074 (1994).

Judge Piccione, in his order of September 9, 2005, held that as a result of genetic testing, John Nogee was not the biological father of the minor child. In addition, Judge Piccione held that while John Nogee signed an acknowledgment of paternity subsequent to the minor child's birth on August 3, 2003, and held the child out to be his own from that point on, he would not have done so had it not been for the plaintiff's fraudulent conduct

and material misrepresentation. See paragraph 13 of Judge Piccione's order of September 9, 2005. Judge Piccione further found in paragraph 15 of his order that the biological mother, through misrepresentation of material fact, led John Nogee to believe he was the biological father of the minor child.

The Superior Court in *Doran v. Doran,* 820 A.2d 1279 (Pa. Super. 2003), discusses the doctrine of paternity by estoppel, to the effect that it grew out of a concern for the protection of the family unit; where that unit no longer exists, it defies both logic and fairness to apply equitable principles to perpetuate a pretense. In some cases, application of estoppel would punish the party that sought to do what was righteous and reward the party that has perpetrated a fraud.

The test for fraud is: (1) a misrepresentation; (2) a fraudulent utterance; (3) an intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damage to the recipient as a proximate result. *Sekol v. Delsantro,* 763 A.2d 405 (Pa. Super. 2000).

It is clear that the actions of John Nogee, in holding out the child as his own, were based upon the fraudulent misrepresentation of Mary E. Maggio, as Judge Piccione held in his order of September 9, 2005.

However, as to Mr. Hughes, there is no indication that he was involved in any manner in the perpetuation of a fraud upon Mr. Nogee; rather, the person responsible for the fraudulent conduct is the mother, Mary E. Maggio.

Under the facts of the present case, the defendant, John W. Hughes, has never acknowledged his paternity of the minor child, has never held himself out to be the father, and has never taken responsibility of any kind, financial or otherwise, for the child. Furthermore, Mr. Hughes indicated that he did not know that a child had been born until the spring of 2005.

The Supreme Court of Pennsylvania, in the case of *In re Adoption of S.A.J.,* stated as follows:

"Although estoppel has been applied most frequently to prevent fathers from *denying* paternity when they have acted as fathers in the lives of their children, the doctrine applies equally to the instant situation where [the putative father] denied his paternity, never held himself out to be father, and never took responsibility, financial or otherwise, for [the] child." 575 Pa. 624, 838 A.2d 616, 625 (2003).

The case sub judice is the converse from how the paternity by estoppel doctrine is generally applied. That is, the doctrine is typically applied to prevent fathers from denying paternity when they have acted, through conduct, as fathers in the lives of the children. However, in the case sub judice, John Hughes has denied paternity, never held himself out to be the father, and never taken responsibility, financial or otherwise, for the child.

The Superior Court of Pennsylvania, in the case of *Gebler v. Gatti,* 895 A.2d 1 (Pa. Super. 2006) decided February 2, 2006, in addressing a similar issue, held that proof of fraud or misrepresentation on the part of the mother precludes the application of the estoppel doctrine

by a putative father, like John Hughes, who may or may not be a child's biological father.

What is true about the situation is that the mother made inconsistent statements about the paternity of her child. Quite simply, paternity, as of this juncture, is unknown, given the genetic testing results on the record. Although the right to impose genetic testing is not absolute, the societal interest against fatherless children outweighs the right in this case. Therefore, the defendant must undergo genetic testing in this case.

Based upon the foregoing authority, the court is of the opinion that the defendant, John Hughes, may not use the conduct of another individual, John Nogee, which the court held was induced by fraudulent conduct by the mother, as a shield to prevent the imposition of genetic testing to determine the paternity issues in this case.

As a result, the court will enter the attached order.

## ORDER

And now, March 8, 2006, for the reasons set forth in the foregoing opinion, the court hereby denies the petition for equitable estoppel, and directs that the Domestic Relations Section schedule genetic testing of the defendant to determine the paternity issues in this case.

The Domestic Relations Section shall properly serve notice upon counsel of record and any party not represented by counsel.