**Jennifer L. CONROY, Appellee**

v.

**Glen ROSENWALD, Appellant.**

Superior Court of Pennsylvania.

Argued June 27, 2007.

Filed Dec. 28, 2007.

---

Norman Perlberger, Bala Cynwyd, for appellant.

Brian J. Carberry, Philadelphia, for appellee.

BEFORE: TODD, GANTMAN, and KELLY, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Glen Rosenwald, asks us to determine whether the trial court erred when it estopped Appellant from denying paternity of T.G. ("Child"), as of May 12, 2001, and reinstated a prior order for child support in favor of Appellee, Jennifer L. Conroy. We hold that the court properly applied the doctrine of paternity by estoppel under the circumstances of this case. Accordingly, we affirm.

¶ 2 The trial court opinion sets forth the relevant facts and procedural history of this case as follows:

A statement of facts is in order. As both counsel recognize, this case is like no other and, thus, presents issues of first impression. [Appellee], during relevant times, was having sexual relations with Michael Guinan (alleged father by estoppel [1]) and [Appellant]. [Appellee] was married to neither Mr. Guinan nor [Appellant] at any time. [Appellant] was married to his former wife during the relevant times.

[Appellee] became pregnant sometime in March, April or May of 1995. [Child]

---

1. Appellant initially raised paternity by estoppel as a defense to Appellee's child support action, filed May 20, 2002, alleging Appellee should be estopped from denying the paternity of Mr. Guinan and asserting the paternity of Appellant with respect to Child.

was born on 12/12/95. Prior to birth and continuing for a period of approximately two (2) to two and one-half (2 ½) years, Mr. Guinan, [Appellee] and [Child] lived together, along with [Appellee's] minor sister, Angeline Conroy, a witness in this matter. Michael Guinan purchased a house and went to settlement on August 28, 1995, and [Appellee] and Michael Guinan moved in while she was pregnant. At the trial, on paternity by estoppel, which commenced and concluded on November 29, 2006 ..., Michael Guinan was not called as a witness by either party, since he currently, allegedly, resides in Delaware. Many facts are disputed. However, the following facts are of record. [Appellant], during the relevant times, was purportedly unable to naturally conceive a child. While [Appellant was] married to his former wife, that relationship produced four (4) children, three of whom were [conceived through] either artificial insemination or *in vitro* fertilization. The last child of [Appellant's] marriage was conceived prior to the conception of [Child], and without artificial insemination or *in vitro* fertilization. After [Appellee] discovered she was pregnant, she moved into the home that Michael Guinan had recently purchased. Michael Guinan and [Appellee] continued to reside there, although there was testimony by [Appellee] that there were frequent periods of separation, with each of them leaving at various times. It was Michael Guinan's house, and he paid the mortgage and most of the living expenses. [Appellee] indicated she contributed some to expenses, although admittedly she did not know to which expenses the contributions were applied.

[Appellee] had been employed by [Appellant] for eight (8) or so years and thus a relationship other than physical had been established. For all intents and purposes, there was admittedly little contact between [Appellee] and [Appellant] during the first two or more years or so of [Child's] life. However, it was uncontradicted that [Appellant] was invited to what was billed as a first birthday/christening party of [Child] in December of 1996. [Appellant] attended without his wife, at Michael Guinan's home with [Appellee'] family and Michael Guinan's family. In addition, [Appellant] visited [Appellee] and [Child] while they were hospitalized following the birth.

Herein lies the problem. [Appellee] and Michael Guinan separated. [Appellee] moved frequently. [Appellee] has sought custody (and perhaps support, but the record is unclear) from Michael Guinan in August 1998, but [Appellee] did not pursue this action, and it was dismissed. A support action was filed by [the Department of Public Welfare], with [Appellee] as plaintiff, on August 31, 2001, against Michael Guinan, but that action was dismissed and marked "Settled by outside agreement." No such agreement is of record. Reliance was made on the computer docket history and notes only. [Appellee] denies knowledge of any such agreement. She failed to appear at scheduled hearing, although Michael Guinan was represented by counsel. Thus, in 1998 and 2001 the two actions by [Appellee] and DPW against Michael Guinan never resulted in a meaningful court order.

Here, the water becomes muddy. [Appellee] indicates that Michael Guinan at some time advised her that he was not the father of [Child] (record unclear as to the specific "time"), and he had DNA evidence to prove it. However, this Court learned during the trial, that there is no documentation in either file to prove the allegation, thus references

to Michael Guinan's paternity (or lack thereof) is gross hearsay, at best.... Subsequently, on May 20, 2002, [Appellee] filed for support against [Appellant]. At a listing, according to the file, [Appellant] asked the [c]ourt for a hearing on paternity by estoppel; his request was denied summarily. The court ordered immediate DNA testing over [Appellant's] objection. [Appellant] was represented by counsel. The DNA test was administered, after [Appellant] was taken from the courtroom in handcuffs by the Sheriff, under protest. Subsequently, when a Support Order was entered against [Appellant], appeals were filed to the Superior Court, with no meaningful results, until this instant Remand, since prior orders of support were not final appealable orders.[2]

The problem: [Because] a hearing was never held on [Appellant's] request for a trial on paternity by estoppel, was the intervening DNA test and results thereof, without [Appellant] being first afforded his due process rights to such a hearing and confrontation of witnesses, dispositive of legal paternity and the ensuing obligations which flow therefrom, or in other words, should the doctrine of estoppel be applied against either [Appellee] or [Appellant] herein? If the doctrine of estoppel is applied, what effect, if any, should this [c]ourt give to the scientific advances that underpin the facts when applying this doctrine?

At the outset, although [Appellant] demanded a hearing on paternity by estoppel, which is his recognized right, he testified at [the current] trial that he believed he [might] be [Child's] father when [Child] was about 3 years old. This is because [Child's] eyes then turned brown, while Mr. Guinan and [Appellee] both have blue eyes,[2] making it genetically improbable for Mr. Guinan to be the biological father. It appears from the record that Michael Guinan first indicated to [Appellee] that "two blue eyes do not make brown eyes" and [Appellee] subsequently discussed this with [Appellant]. Furthermore, [Appellant] acknowledged that he recognized [at another time] that [Child] has some resemblance to his oldest child [ ].

---

2. This is testimonial only [because] this [c]ourt has never seen Mr. Guinan and no proof of nor objection to this "conclusion" was ever made.

---

2. At this point, we restate a fuller procedural history of the prior appeals in this case as follows. On August 19, 2002, the court ordered Appellant to undergo immediate and involuntary DNA testing, which established his paternity of Child. Appellant filed a motion for reconsideration of the August 19th order. Appellant then appealed to this Court, arguing the trial court erred in denying Appellant a hearing on his claim of paternity by estoppel before ordering him to submit to DNA testing. This Court dismissed the appeal, because Appellant failed to file a brief. Appellant's application to reinstate the appeal was denied by this Court on March 18, 2003. By order dated June 24, 2003, the trial court declared the issue of paternity by estoppel had been decided. Appellant filed an appeal from that order. This Court quashed his appeal as interlocutory. On May 25, 2004, following a hearing, the court adjudicated Appellant as father of Child and entered an interim order of child support. On September 16, 2005, the interim support order was made a final order. Appellant appealed from the final support order, again arguing he was entitled to and deprived of a hearing on his defense of paternity by estoppel. In its disposition of June 9, 2006, a panel of this Court, with one judge dissenting, vacated the child support order and remanded the case for a hearing on Appellant's claim of paternity by estoppel, without reviewing the support order. On November 29, 2006, Appellant's paternity by estoppel hearing proceeded before a different jurist, who authored the above-quoted opinion.

(Trial Court Opinion, dated February 27, 2007, at 2–5) (internal citations omitted). The court explained:

> On November 29, 2006, this [c]ourt entered a Final Memorandum Order [dated December 19, 2006 and entered December 20, 2006] finding that [Appellant] is the legal father of [Child] as of 5/21/2001, and that [Appellee] is estopped from claiming [Appellant] is the father prior to that date.

(*Id.* at 1–2). On December 21, 2006, the court reinstated the prior support order of $1,411.40/month, which had been previously entered on September 16, 2005. Appellant timely filed a notice of appeal on January 18, 2007.[3] On January 22, 2007, the court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellant timely filed on February 2, 2007.

¶ 3 Appellant raises three issues for our review:

> DID THE TRIAL COURT ABUSE ITS DISCRETION IN ALLOWING APPELLEE TO PROCEED AGAINST APPELLANT FOR CHILD SUPPORT, DESPITE APPELLANT'S CLAIM OF PATERNITY BY ESTOPPEL?
>
> DID THE TRIAL COURT ABUSE ITS DISCRETION BY ADMITTING EVIDENCE OF APPELLANT'S DNA TESTING AND THE POST–DNA CONDUCT DURING THE ESTOPPEL HEARING?
>
> DID THE TRIAL COURT ABUSE ITS DISCRETION IN GRANTING PARTIAL ESTOPPEL?

(Appellant's Brief at 5).

¶ 4 For purposes of disposition, we address Appellant's issues together. Appellant argues Appellee's conduct for the six and one-half years between Child's birth on December 12, 1995, until Appellee initiated her support action against Appellant on May 20, 2002, was sufficient to estop Appellee from ever seeking child support from Appellant. According to Appellant, (1) Appellee listed Mr. Guinan as Child's father on the birth certificate; (2) Appellee and Mr. Guinan functioned as a family until Child was two years old and acted as Child's parents for the first five years of Child's life; (3) after Appellee and Mr. Guinan ended their relationship, Mr. Guinan continued to see Child, to pay the mortgage and expenses on the home where Appellee and Child lived, and to carry Child on his health insurance; (4) Appellee brought two actions against Mr. Guinan for child support; (5) even after Appellee and Mr. Guinan ended their relationship, Mr. Guinan continued to exercise partial custody of Child. Appellant maintains Appellee told Child that Appellant was her father only after the DNA test results, but until that time, Child believed Mr. Guinan was her father.

¶ 5 Appellant further claims he did not voluntarily acknowledge paternity in 2001 or at any other time, and his supposed admission is based solely on Appellee's testimony, which lacks credibility. To the contrary, Appellant avers he did not concede or believe he was Child's father at any time before the DNA test results. Appellant asserts his ex-wife was unaware of Child until Appellee went to her home and told her. Appellant's former wife stated she did not at any time hear Appellant agree to his paternity. Appellant insists that, on the two occasions Appellee initiated contact between Child and Appellant, he merely tried to offer Child reassurance, which did not under any circum-

---

**3.** Appellant does not challenge the calculation or amount of support ordered; he contests only the court's decision regarding his issue of paternity by estoppel.

stances constitute an acknowledgment of paternity. Appellant submits Appellee is seeking support from Appellant simply because her relationship with and assistance from Mr. Guinan terminated. Appellant maintains there is no other explanation for why Appellee waited so long (approximately six and one half years) to bring a support action against Appellant.

¶ 6 Next, Appellant argues the trial court should have granted him a paternity by estoppel hearing prior to compelling the involuntary DNA test. Therefore, Appellant claims, the DNA test results and Appellant's post-DNA conduct should have been excluded at the belated estoppel hearing, as admission of these results at the later estoppel hearing unfairly affected its outcome. Appellant directs our attention to the hearing transcript where the court said, "Whether the evidence comes in or not, I mean—since law school days I said to myself, how can you say forget the pink elephant that you just told me to forget, that you just told me about, I can't forget it. I am only human...." (N.T. Estoppel Hearing, 11/29/06, at 80(a)). Appellant characterizes this statement as an indication that the court erroneously relied upon Appellant's alleged post-test results acknowledgment of paternity and other acts (for example, Appellant told his four other children he was Child's father, and the two encounters between Appellant and Child, both of which Appellee initiated) to estop Appellant from denying paternity of Child. Had Appellant been afforded an estoppel hearing back in 2002, before the DNA test, he avers the court would have based its decision entirely on Appellee's and Mr. Guinan's conduct following the birth of Child, which conduct surely would have served to estop Appellee from seeking child support from Appellant.

¶ 7 Appellant claims the evidence presented during the estoppel hearing led the court to deny Appellee the right to obtain child support from Appellant from December 12, 1995 until May 12, 2001. The court chose May 21, 2001 based on Appellee's testimony that Appellant had acknowledged his paternity at some time between Child's fifth and sixth birthdays. If Appellant had acknowledged paternity in May 2001, Appellant queries why Appellee would pursue a support action against Mr. Guinan in August 2001, after Appellant's alleged acknowledgement.

¶ 8 Finally, Appellant asserts there is no authority for the concept of "partial estoppel" in this paternity case. Appellant insists the court's reliance on *Doran v. Doran,* 820 A.2d 1279 (Pa.Super.2003) and *Kohler v. Bleem,* 439 Pa.Super. 385, 654 A.2d 569 (1995), *appeal denied,* 541 Pa. 652, 664 A.2d 541 (1995) for the application of partial estoppel is misplaced, as both cases involved fraud, which is not an issue here. Appellant submits Appellee's right to child support from Appellant should not be revived, under the facts of the present case, so many years after Child's birth. Appellant contends the court properly decided Appellee was estopped from obtaining child support for the first five and one half years of Child's life, but erred when it estopped Appellant from denying his paternity after that time and confirmed his obligation to pay child support retroactive to the date of Appellee's support action against him (May 20, 2002). Appellant insists there is no explanation for the court's order of partial estoppel other than the DNA test results and Appellant's alleged post-test results conduct. Appellant concludes Appellee should have been completely estopped from seeking child support from Appellant for all time under the circumstances of the case. We disagree.

¶ 9 "[A]ppellate review of support matters is governed by an abuse of discretion standard. An abuse of discre-

tion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record." *Warfield v. Warfield,* 815 A.2d 1073, 1075 (Pa.Super.2003) (internal citations omitted).

¶ 10 "Generally, estoppel in paternity issues is aimed at achieving fairness as between the parents by holding both mother and father to their prior conduct regarding paternity of the child." *Buccieri v. Campagna,* 889 A.2d 1220, 1224 (Pa.Super.2005) (quoting *Freedman v. McCandless,* 539 Pa. 584, 592, 654 A.2d 529, 533 (1995)). This Court has held that the principle of paternity by estoppel is well suited to cases where no presumption of paternity applies. *Gulla v. Fitzpatrick,* 408 Pa.Super. 269, 596 A.2d 851, 858 (1991). The number of months or years a party held out another as the father of a child is not determinative of an estoppel claim. *Id.* "Rather, it is the nature of the conduct and the effect on the father and the child and their relationship that is the proper focus of our attention." *Id.*

¶ 11 Estoppel has been used variously in cases involving paternity and support. *See, e.g., Fish v. Behers,* 559 Pa. 523, 741 A.2d 721 (1999) (holding as between mother and biological father, mother was estopped from asserting paternity of biological father, where she repeatedly assured her ex-husband that he was child's biological father); *Moyer v. Gresh,* 904 A.2d 958 (Pa.Super.2006) (holding as between putative father and biological father, biological father was estopped from challenging paternity of putative father where putative father raised child for nine years); *Buccieri, supra* (holding biological father was estopped from asserting paternity due to eight-year delay in accepting any responsi-

bility as parent); *J.C. v. J.S.,* 826 A.2d 1, 5 (Pa.Super.2003) (holding putative father was estopped from denying paternity because he continued to act as child's father after his paternity was disproved); *Gulla, supra* (holding as between mother and putative father, mother was estopped from denying paternity of putative father where she had held him out as child's father). Even in the context of a marriage, the principle of estoppel can be applied if fraud occurs. *See also Doran supra* (holding husband was not estopped from denying paternity of child born during husband's marriage to mother, where she deceived him into believing he was child's biological father); *Kohler, supra* (holding biological father could not assert estoppel to prevent presumptive father from denying paternity, in light of conclusive evidence of paternity, fraud and misrepresentation on issue of true identity of biological father, and absence of intact family).

¶ 12 Public policy favors the elimination of the stigma of illegitimacy. *In re Estate of Greenwood,* 402 Pa.Super. 536, 587 A.2d 749, 756 (1991); 23 Pa.C.S.A. § 5102 (declaring "All children shall be legitimate irrespective of the marital status of their parents . . .").

DNA paternity testing, with its pinpoint accuracy, has posed more squarely than ever before a dilemma in paternity testing. Before the advent of DNA testing, the determination of paternity could not be as accurately established as it can today. Because the truth can be so reliably revealed, the policy question as to whether to expose the truth or whether to bypass the truth for some important family or societal reasons has taken on added meaning. While we recognize that the right to paternity testing is not absolute and there may be strong family or societal reasons to deny paternity testing, such testing should be fa-

vored.... The establishment of a parent-child relationship is important to both parent and child. A father and his child have the right to establish a kinship relationship and the child has a right to expect both financial and emotional support from his or her father. Furthermore, a child's biological history may be essential to his or her future health, and the child's cultural history may be important to his or her personal well being.

*Strayer v. Ryan,* 725 A.2d 785, 788 (Pa.Super.1999).

■■■ ¶ 13 "Estoppel in paternity actions is based on the public policy that children should be secure in knowing who their parents are...." *Gebler v. Gatti,* 895 A.2d 1, 3 (Pa.Super.2006) (citing *Brinkley v. King,* 549 Pa. 241, 701 A.2d 176 (1997)). "The doctrine is designed to protect the best interests of minor children by allowing them to 'be secure in knowing who their parents are.'" *Moyer, supra* (internal citation omitted). The application of paternity by estoppel in any form is very fact specific and must be grounded in a close analysis of the circumstances of the case. *Gebler, supra* (citing *T.L.F. v. D.W.T.,* 796 A.2d 358, 363 (Pa.Super.2002)); *Matter of Green,* 437 Pa.Super. 606, 650 A.2d 1072, 1075 (1994). The length of time involved is only one circumstance to be considered. *Gulla, supra.* This Court has also considered society's concerns for stability in the child's life, such as whether there is a stable family unit to preserve. *Buccieri, supra.* An additional factor is whether the child's father "is willing to care [for the child] ... and capable of doing so...." *Moyer, supra* at 963.

■■■ ¶ 14 Finally, with respect to the admission of evidence, we observe:

Admission of evidence is within the sound discretion of the trial court and we review the trial court's determinations regarding the admissibility of evidence for an abuse of discretion. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. For evidence to be admissible, it must be competent and relevant. Evidence is competent if it is material to the issue to be determined at trial. Evidence is relevant if it tends to prove or disprove a material fact. Relevant evidence is admissible if its probative value outweighs its prejudicial impact. The trial court's rulings regarding the relevancy of evidence will not be overturned absent an abuse of discretion.

*American Future Systems, Inc. v. BBB,* 872 A.2d 1202, 1212 (Pa.Super.2005), *affirmed,* 592 Pa. 66, 923 A.2d 389 (2007) (internal citations omitted).

Pursuant to Rule of Evidence 402, relevant evidence is generally admissible, and irrelevant evidence is inadmissible. Further, relevant evidence may be excluded if its probative value is outweighed by its potential for unfair prejudice, defined as a tendency to suggest decision on an improper basis or to diver[t] the jury's attention away from its duty of weighing the evidence impartially.

*Stalsitz v. Allentown Hosp.,* 814 A.2d 766, 779 (Pa.Super.2002), *appeal denied,* 578 Pa. 717, 854 A.2d 968 (2004) (internal citations and quotation marks omitted) (citing Pa.R.E. 402, 403). Nevertheless, a court sitting as trier of fact is presumed to disregard inadmissible evidence and consider only relevant and competent evidence. *Commonwealth v. Moss,* 852 A.2d 374 (Pa.Super.2004); *Commonwealth v. O'Brien,* 836 A.2d 966 (Pa.Super.2003), *appeal denied,* 577 Pa. 695, 845 A.2d 817 (2004). Moreover, "[O]n issues of credibil-

ity and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *Moyer, supra* at 962 (citing *Billhime v. Billhime*, 869 A.2d 1031, 1036 (Pa.Super.2005)).

¶ 15 In the instant case, Appellee became pregnant with Child during a time period when she was having sexual relations with Mr. Guinan and with Appellant. Both Appellee and Appellant believed Appellant was sterile. Appellee, therefore, reasonably understood Mr. Guinan to be Child's biological father. Appellee and Child lived with Mr. Guinan for approximately two years following Child's birth; Mr. Guinan was named Child's father on the birth certificate. Subsequently, Mr. Guinan denied paternity.

¶ 16 Appellee then filed an action for child support against Appellant. Appellant asserted estoppel as a defense to the support action. At the hearing, the court ordered Appellant to undergo immediate and involuntary DNA testing, which unequivocally established his paternity of Child. Following the paternity test, Appellant filed a petition for reconsideration, arguing the results of the paternity test should be sealed pending his right to a paternity by estoppel hearing. After the trial court denied Appellant's petition, Appellant filed an appeal, which this Court dismissed for failure to file a brief. This Court later denied Appellant's subsequent application to reinstate the appeal.

¶ 17 Following a "paternity" hearing on May 25, 2004, the court adjudicated Appellant the father of Child and entered an interim order of child support. On September 16, 2005, the interim support order was made a final order. Appellant filed a

notice of appeal to this Court. In a disposition filed June 9, 2006, this Court vacated the child support order and remanded the case for a paternity by estoppel hearing.[4]

¶ 18 Another jurist held Appellant's paternity by estoppel hearing and determined Appellant should be estopped from denying paternity from May 12, 2001 forward. Additionally, Appellant was declared the legal and biological father of Child. Appellant was ordered to pay child support and arrears retroactive to the date Appellee filed her support action (May 20, 2002).

¶ 19 In response to Appellant's contentions, the court reasoned as follows:

Thus, we come full circle. [Appellee] clearly was wrong in declaring Michael Guinan was the father on the birth certificate and in subsequent Court papers. [Appellant] was wrong in continuing in denial after many of the factors began to unfold which could or should have convinced him that he may truly have parental obligations towards [Child].

\* \* \*

The oft cited prior policy reasons underlying paternity by estoppel do not apply here.[6] First, there is no intact marriage or family unit to protect.[7] Moreover, [Child] already knows [Appellant] is her biological father. Thus, prior policy of attempting to prevent trauma to [Child] does not apply. Mr. Guinan left years ago and has, purportedly, had no contact with [Child] for about 8 years. . . .

---

4. Due to Appellant's failure to follow through on his appeal from the initial order for involuntary testing, he arguably waived his affirmative defense of paternity by estoppel.

6. In this case, it should be appreciated that this [c]ourt did NOT RENDER ITS DECISION BASED ON THE DNA objected to by [Appellant]. The time period that this [c]ourt

Nevertheless, this Court restored his right to pursue that defense and remanded the matter for an estoppel hearing.

has determined that [Appellant] and [Appellee] knew, or should have known that [Appellant] was the biological father of [Child] preceded the complained of alleged violation of due process in that the DNA sample was taken without due process protection. This [c]ourt's decision and analysis was based upon, and only upon the facts and inferences drawn from the testimony adduced at trial. Even though there were depositions, they were not introduced, this [c]ourt was not privy to them and, because of oblique reference to same, they did not affect this [c]ourt's decision. This [c]ourt's decision about [Appellant] was NOT PREDICATED UPON THE FINDING OF PATERNITY BY A DNA TEST, but upon the totality of the facts as presented in open court, on the record on November 29, 2006, and concluded that day, except for this [c]ourt's research, briefs of counsel, and analysis of the facts and applying same to this matter....

7. Indeed, [Appellant's] marriage ended in divorce in 1996. As already noted, none of the parties ever married.

Thus, the facts presented here are more akin to those cases where this [c]ourt has **not** imposed paternity by estoppel upon the non-biological father. The [c]ourt follows this line of cases in its decision herein.

In essence, this is not a case of "competing" claims of paternity. Mr. Guinan has been absent from [Child's] life. He was part of [Child's] life when she was young, and has now no known bond with [Child] in need of protection by the [c]ourt. Moreover, Mr. Guinan, [Appellee] and [Appellant] acknowledged that Mr. Guinan is not [Child's] biological father sometime before the DNA testing of [Appellant].

This [c]ourt is unconvinced that [Appellee] actively and intentionally misled Mr. Guinan. The [c]ourt finds that the equitable principles underlying paternity by estoppel prevent [Appellant] from denying paternity, particularly in light of his medical condition, which undisputedly led [Appellee] and Mr. Guinan to believe [Appellant] could not be [Child's] father.

There were mutual mistakes of facts. [The court] does not find fraud by either [Appellee] or [Appellant].

Furthermore, [Child's] best interest is this [c]ourt's guiding principle. No party is actively misleading [Child]. [Child] already knows [Appellant] is her biological father, and thus, any danger of trauma in discovering "another father" is dissipated. Also, [Child] has 4 biological siblings by [Appellant]. [Child's] "Rosenwald" siblings all now know they have a sister. [Child] has a proud ethnic heritage she might wish to pursue. Indeed, it is simply inequitable under the facts here to allow [Appellant] to utilize paternity by estoppel to escape his financial and emotional responsibilities to [Child].

To allow [Appellant] to utilize estoppel principles to deny paternity of [Child] might well impose psychological trauma on [Child] from being continually treated as an inferior to [Appellant's] other child(ren). [Appellant] has admitted that he believed he may be [Child's] father from sometime between when she was 3 to 5 years old. He admitted this to [Appellee]. More importantly, he admitted this to [Child], according to [Appellee], when [Child] was around 5–6 years old. Indeed, this [c]ourt cannot help but ponder why, in [Appellant's] view, is not [Child] the "mitzvah" or "miracle" in the same manner ... his fourth child was a "mitzvah" or "miracle," as he candidly testified at trial?

(Trial Court Opinion at 12–14) (some internal citations omitted) (emphasis in original).

¶ 20 We accept the court's reasoning as sound. Paternity by estoppel is an equitable remedy and requires the consideration of multiple factors, most important of which is the best interest of Child. *See Moyer, supra.* This is not a case of com-

peting claims of paternity or a situation where Child's family life or previous paternal bond is threatened with disruption. Child is not receiving care or assistance from any paternal figure and has not enjoyed the fulfillment of a stable father-child relationship. Based on this assessment, we conclude the trial court properly focused on Child's right to support and kinship. *See Matter of Green, supra.* Requiring Appellant to step up and accept financial and emotional responsibility enables Child to receive the benefits to which Child is entitled. Furthermore, Child deserves to be treated as a member of Appellant's family and to explore her familial background if she so chooses. *See Strayer, supra.*

¶ 21 Additionally, for the first two years of Child's life, Appellee and Mr. Guinan reasonably believed Mr. Guinan was Child's father, based on the assumption that Appellant was sterile. Appellee also sought child support from Mr. Guinan.[5] The court decided this conduct served to estop Appellee from obtaining child support from Appellant for the years Appellee and Mr. Guinan justifiably believed Mr. Guinan was the father and Appellee acted accordingly.[6] Likewise, the court determined Appellant could not reasonably deny his paternity, once he had admitted he was Child's father.

¶ 22 The court's opinion twice makes clear its decision regarding estoppel was not predicated on the DNA test results. (*See* Trial Court Opinion at 12 n. 6). Although the court knew the results, we can presume the court disregarded this information. *See Moss, supra.* Instead, the court evaluated the totality of the circumstances, the pre-test conduct of the parties, and the testimony presented, which the court was free to accept or reject.[7] *See Moyer, supra.* The court weighed the evidence and rendered its decision. *See Matter of Green, supra.*

¶ 23 We hold the court's application of partial estoppel is a fitting remedy in this case. The court estopped Appellee from obtaining child support from Appellant until the time of Appellant's pre-DNA test admission of paternity. The factors that led to Appellant's admission of paternity allowed the court to estop Appellant from denying his paternity of Child from the date of the admission. Hence, the court appropriately ordered Appellant to pay child support for Child from the date of the filing of the child support petition. *See* Pa.R.C.P. 1910.17 (stating generally that support order shall be effective from date of filing of complaint). Accordingly, we affirm.

¶ 24 Order affirmed.

---

5. There is no record evidence of any final support order having been entered against Mr. Guinan. *Compare Barr v. Bartolo*, 927 A.2d 635 (Pa.Super.2007) (reiterating that absent appeal or showing of fraud or mutual mistake, final support order establishes paternity as matter of law).

6. The relationship between Appellee and Mr. Guinan was marked by frequent disputes and several separations. Once it became physically obvious to Mr. Guinan that he was not Child's biological father, he effectively ceased contact with Appellee and Child.

7. Appellant emphasizes "inconsistencies" in Appellee's testimony, which sprang to a large extent from counsel's attempt to impeach Appellee with her prior deposition testimony. We recall that the trial court said it did not consider the deposition testimony when making its decision. Further, the alleged inconsistencies are taken out of context and either misstated or cast in a more damaging light than warranted. Aggressive advocacy notwithstanding, we decline to disturb the court's credibility determinations.