**LEBANON COUNTY CHILDREN &
YOUTH SERVICES, Appellee**

v.

**Timmy M. WAGNER, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 19, 2008.

Filed May 14, 2008.

Robert B. Keys, Jr., Lebanon, for appellant.

Joseph M. Hill, Jr., Lebanon, for appellee.

BEFORE: PANELLA, SHOGAN and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellant, Timmy M. Wagner, appeals from the order entered on October 10, 2007, in the Lebanon County Court of Common Pleas directing him to submit to genetic testing to determine the paternity of T.L.W., a minor. Because Children and Youth Services stands in the shoes of the natural mother for the purposes of estoppel and there was no evidentiary hearing, we vacate and remand for an estoppel hearing.

¶ 2 This Court summarized the facts of this case in a previous memorandum:

In December of 2006, [Appellee] Lebanon County Children & Youth [Appellee] filed a complaint for support against Appellant.... In the complaint, [Appellee] claimed that [Appellant] is the father of T.L.W., a minor....

* * *

The court ordered [Appellant] to appear before a conference officer on January 25, 2007. At the conference, [Appellant] did not acknowledge paternity. Consequently, on January 25, 2007, the trial court entered an order requiring [Appellant] to appear for genetic testing.

Thereafter, [Appellant] filed a motion to stay genetic testing. According to the motion, at the aforementioned conference, [Appellant] was provided with a copy of an affidavit in support of establishing paternity. The affidavit was completed by L.W. ("Mother"), T.L.W.'s natural mother.[1] [Appellant]'s motion asserted that the affidavit indicated that Mother was married to B.W. [Husband] when T.L.W. was born, that [Husband] was named as the father on T.L.W.'s birth certificate, and that [Husband] acted and presented himself as T.L.W.'s father. Based upon this information, [Appellant] contended that a presumption of paternity attached to [Husband] as to T.L.W. [Appellant], therefore, averred that "it would be improper for [him] to be subjected to genetic testing regarding the paternity of [T.L.W.,] and

the [c]omplaint [for support] against him should be dismissed.[2] Motion to Stay Genetic Testing, 2/6/07, at ¶ 5.

[Appellee] then filed an answer to the motion. In [its] answer, [Appellee] insisted that no presumption of paternity existed as to [Husband]. [Appellee] based its position on the fact that [Appellee] and Mother earlier had brought a support action against [Husband], which resulted in the trial court entering an order on November 21, 2006, wherein the court stated that genetic testing excluded [Husband] as T.L.W.'s biological father.

In an order entered on April 17, 2007, the trial court denied [Appellant's] motion to stay genetic testing. On April 27, 2007, [Appellant] filed a notice of appeal in which he stated that he was appealing the April 17, 2007, order of the trial court.

_____

1. According to the trial court, [Appellee] has custody of T.L.W. due to Mother's incarceration.

2. In his brief filed in support of the motion to stay genetic testing, [Appellant] essentially abandoned his presumption of paternity claim. Instead, [Appellant] focused upon whether [Appellee] should be estopped from seeking support from him.

*Lebanon County Children and Youth Services v. T.M.W.*, No. 751 MDA 2007, unpublished memorandum at 1–3, 943 A.2d 330 (Pa.Super. filed October 3, 2007) (footnotes in original).

¶ 3 This court quashed the appeal from the trial court's denial of the motion to stay, finding that because the appeal was interlocutory, we lacked jurisdiction. (*Id.* at 4). However, while the appeal was pending, the original deadline for genetic testing lapsed, and the trial court entered a second order compelling genetic testing on October 10, 2007. Appellant filed the instant appeal from that order.

¶ 4 Appellant raises a single issue, arguing that trial court abused its discretion first, in finding that Appellee was not estopped from asserting paternity against him, and then in ordering genetic testing. He contends that Mother's prior conduct in holding out Husband as the child's father supports a finding that Appellee should be estopped from asserting paternity against him. We find that because the trial court did not conduct a hearing on the issue of estoppel, the record is insufficient to allow an analysis of Appellant's claims.

¶ 5 "[I]n any child support matter in which paternity is denied on the grounds of estoppel, the trial court **must conduct a hearing on the issue of estoppel** and determine whether the mother is estopped from pursuing her claim against the alleged father." *Freedman v. McCandless,* 539 Pa. 584, 654 A.2d 529, 533 (1995) (emphasis added). "Only when the doctrine of estoppel does not apply will the mother be permitted to proceed with a paternity claim against a putative father with the aid of a blood test." *Jones v. Trojak,* 535 Pa. 95, 634 A.2d 201, 206 (1993) (citation omitted). Thus, it was improper for the trial court to order genetic tests without providing Appellant a hearing on the issue of estoppel. *See Freedman, supra.*

¶ 6 Additionally, we direct the trial court's attention to relevant case law. In its opinion in support of the original testing order, the trial court determined that estoppel did not apply because the instant complaint was brought by Appellee, Lebanon County Children and Youth, not by Mother. (Trial Ct. Op., 5/10/07, at 6–7). In a footnote, the court argued that *Matter of Green,* 437 Pa.Super. 606, 650 A.2d 1072 (1994), was factually distinguishable and thus not controlling. We disagree and find that *Green* does control.

¶ 7 *Green* held:

Because it is the parent/child bond and the nature of that relationship that is our primary focus ... we find that the doctrine [of equitable estoppel] is applicable to an agency such as DHS. Public policy dictates that the parent/child bond be nurtured. We are bound to preserve that relationship where it exists. Refusing to apply the doctrine of paternity by estoppel simply because an agency, and not a parent, challenges paternity, would be inconsistent with our efforts to preserve the parent/child relationship.

*Id.* at 1075 (citations omitted). Thus, the fact that the assertion of paternity is advanced by Appellee, an agency rather than the natural mother, is of no moment. Estoppel prevents a mother, who has held a child out as the offspring of one man from asserting that another man is the biological and financially responsible father:

Estoppel in paternity actions is merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, **nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father** .... [T]he doctrine of estoppel in paternity actions is aimed at achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child.

\* \* \*

■ These estoppel cases indicate that ... blood tests may be irrelevant, for **the law will not permit a person in these situations to challenge the status which he or she has previously accepted.**

*Fish v. Behers*, 559 Pa. 523, 741 A.2d 721, 723 (1999) (citation omitted) (emphasis added). If, after the requisite hearing, there is a sufficient showing that Mother held out the child as the offspring of her husband, she would be estopped from asserting paternity against Appellant. *See Trojak, supra.* Even though T.L.W. is now in Appellee's care, if the evidence shows that Mother is estopped, then the agency is also estopped. We find that in such an instance the agency stands in the shoes of the mother, and is bound by her prior conduct in acknowledging paternity. *See Green, supra.*

■ ¶ 8 We also note that the trial court expressed concerns that applying estoppel here "amounts to punishment of sorts ... because the support [c]omplaint against Husband has been dismissed with prejudice, and if the instant [s]tay is granted, [Appellant] is likewise immune from any obligations to support [T.L.W.]" (Trial Ct. Op., at 6–7). However, neither Mother nor the agency objected to Husband's petition for DNA testing, nor did they appeal from the order dismissing the support action against him. While Mother or the agency could have raised the doctrine of estoppel to challenge **Husband's** denial of paternity, their failure to do so does not mean that Appellant's rights should be compromised, or that the interests of the child are somehow served by forging an entirely new parental relationship based on genetic testing alone. Estoppel functions to preserve the relationships between children and those who accept the mantle of parental responsibility, and to prevent a mother from seeking a new source of financial support when the relationship with the man whom she has held out as the father ends. *See Trojak, supra,* at 206. While the trial court expressed concern that a finding of estoppel means that Appellant is "immune from any obligations"

regarding T.L.W., (Trial Ct. Op. at 7), that is always the consequence of estoppel; the fairness interest inherent in estoppel requires that "[a] mother cannot hold out her husband to be the father and thereafter, upon separation, charge a different man with paternity." *See Trojak, supra.*

¶ 9 Accordingly, we remand to the trial court for a hearing to determine if, based on Mother's actions and conduct of, estoppel applies. If it does, then Appellee shall be estopped from asserting paternity and no genetic test may be ordered. *See Green, supra; see Freedman, supra.*

¶ 10 Order vacated. Remanded to the trial court with instructions. Panel jurisdiction relinquished.

¶ 11 SHOGAN, J. concurs in the result.